**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| DEBORAH DESCHENEAUX,<br><br>Plaintiff,<br><br>v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC., EQUIFAX INFORMATION SERVICES, LLC, TRANS UNION LLC, and CAPITAL ONE BANK,<br><br>Defendants. | **Case No.:**<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

Deborah Descheneaux ("Plaintiff") by and through the undersigned counsel brings this action on an individual basis, against Experian Information Solutions, Inc. ("Experian"), Trans Union LLC ("Trans Union"), Equifax Information Services, LLC ("Equifax"), (collectively "CRA Defendants"), Capital One Bank ("Capital One" or "Furnisher Defendant"), and (all collectively, the "Defendants"), alleging violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq*.

## INTRODUCTION

1. Plaintiff, an identity theft victim, brings this action against the Defendants for violations of the FCRA, 15 U.S.C. § 1681, *et. seq*.

2. More than twenty million people, just under 10% of all adult Americans, are

victims of identity theft each year.[1] Federal law requires that each consumer reporting agency ("CRA") protect victims by taking steps to remove fraudulent information from victims' reports, to ensure that only third parties with permissible purposes see victims' reports and to implement fraud alerts and security freezes at victims' requests. This lawsuit arises from CRA Defendants' refusal to comply with these statutory requirements and resulting failure to protect Plaintiff from identity theft and identity theft consequences.

3. The computerization of our society has resulted in a revolutionary increase in the accumulation and processing of data concerning individual American consumers. Data technology, whether it is used by businesses, banks, the Internal Revenue Service, or other institutions, allows information concerning individual consumers to flow instantaneously to requesting parties. Such timely information is intended to lead to faster and better decision-making by its recipients and, in theory, all of society should ultimately benefit from the resulting convenience and efficiency.

4. However, unfortunately this information has also become readily available for, and subject to, mishandling and misuse. Individual consumers can and do sustain substantial damage, both economically and emotionally, whenever inaccurate or fraudulent information is disseminated and/or obtained about them. In fact, the CRA Defendants acknowledge this potential for misuse and resulting damage every time they sell their

---

[1] Victims of Identity Theft, 2018, 1. U.S. Dept. of Justice, Bureau of Justice Statistics. April 2021, NCJ 256085.

respective credit monitoring services to a consumer.

5. The ongoing technological advances in the area of data processing have resulted in a boon for the companies that accumulate and sell data concerning individuals' credit histories and other personal information. Such companies are commonly known as consumer reporting agencies ("CRAs").

6. These CRAs sell information to readily paying subscribers (i.e., retailers, landlords, lenders, potential employers, and other similar interested parties), commonly called "consumer reports," concerning individuals who may be applying for retail credit, housing, employment, or a car or mortgage loan.

7. Since 1970, when Congress enacted the FCRA, 15 U.S.C. § 1681, *et seq.*, federal law has required CRAs to implement and utilize reasonable procedures "to assure maximum possible accuracy" of the personal, private, and financial information that they compile and sell about individual consumers.

8. One of the primary purposes in requiring CRAs to assure "maximum possible accuracy" of consumer information is to ensure the stability of our banking system:

> The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

*See* 15 U.S.C. § 1681(a)(1).

9. The preservation of one's good name and reputation is also at the heart of the FCRA's purposes:

> [W]ith the trend toward computerization of billings and the establishment of all sorts of computerized data banks, the individual is in great danger of having his life and character reduced to impersonal "blips" and key-punch holes in a stolid and unthinking machine which can literally ruin his reputation without cause, and make him unemployable or uninsurable, as well as deny him the opportunity to obtain a mortgage or buy a home. We are not nearly as much concerned over the possible mistaken turn-down of a consumer for a luxury item as we are over the possible destruction of his good name without his knowledge and without reason. Shakespeare said, the loss of one's good name is beyond price and makes one poor indeed.

*Bryant v. TRW, Inc.*, 689 F.2d 72, 79 (6th Cir. 1982) [quoting 116 cong. Rec. 36570 (1970)] (emphasis added).

10. The FCRA also requires CRAs to conduct a reasonable reinvestigation to determine whether information disputed by consumers is inaccurate and record the current status of the disputed information, or delete the disputed information, before the end of the 30-day period beginning on the date on which the CRA receives the notice of dispute from the consumer. This mandate exists to ensure that consumer disputes are handled in a timely manner and that inaccurate information contained within a consumer's credit report is corrected and/or deleted so as to not prevent said consumer from benefiting from his or her credit and obtaining new credit.

11. In light of these important findings and purposes, Congress specifically noted "a need to insure that [CRAs] exercise their grave responsibilities with fairness, impartiality, and respect for the consumer's right to privacy." *See* 15 U. S.C. § 1681(a)(4).

12. The FCRA also requires Furnishers of information, a creditor or other third party that provides information about consumer to a CRA, upon notice, to conduct a

reasonable reinvestigation of all disputes with regard to the completeness or accuracy of any information it provides to the CRAs regarding a consumer and modify, delete, or permanently block any items of information found to be inaccurate, incomplete, or unverifiable after said reinvestigation is completed.

13. Plaintiff's claims arise out of Experian, Equifax, Trans Union, and Capital One plainly deficient reinvestigations considering Plaintiff's disputes and notice that she was a victim of identity theft.

14. Accordingly, Plaintiff brings claims against Experian, Equifax, and Trans Union for: 1) failing to follow reasonable procedures to assure the maximum possible accuracy of Plaintiff's credit reports, in violation of the FCRA, 15 U.S.C. § 1681e(b); and 2) failing to conduct a reasonable reinvestigation to determine whether information Plaintiff disputed was inaccurate and in fact the product of identity theft, and for failing to delete the disputed information from Plaintiffs credit file, in violation of the FCRA, 15 U.S.C. § 1681i.

15. Plaintiff also brings claims against the CRA Defendant for selling Plaintiff's credit report to third parties without a permissible purpose in violation of the FCRA, 15 U.S.C. § 1681b(a).

16. Further, Plaintiff also brings claims against the Furnisher Defendant, for failing to conduct a reasonable investigation to determine whether information Plaintiff disputed was inaccurate and in fact, the product of identity theft, and for failing to delete the disputed information from Plaintiff's credit file, in violation of FCRA, 15 U.S.C. §

1681s-2b.

17. As part of this action, Plaintiff seeks actual, statutory, and punitive damages, costs, and attorneys' fees from the Defendants for their willful and/or negligent violations of the FCRA, 15 U.S.C. § 1681, *et seq*., as described herein.

**JURISDICTION AND VENUE**

18. This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331 because Plaintiff alleges violations of the FCRA, a federal law. *See* 15 U.S.C. § 1681p (FCRA) (permitting actions to enforce liability in an appropriate United States District Court).

19. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because Defendants regularly transact business within this District, are otherwise subject to personal jurisdiction in this District, and a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

**PARTIES**

20. Plaintiff is a natural person of Shirley, Massachusetts, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

21. Experian is a limited liability company with a principal place of business located at 475 Anton Boulevard, Costa Mesa, California 92626, and is authorized to do business in the State of Massachusetts, including within this District.

22. Equifax is a limited liability company with a principal place of business located at 1550 Peachtree Street NW, Atlanta, Georgia 30309, and is authorized to do

business in the State of Massachusetts, including within this District.

23. Trans Union is a limited liability company with a principal place of business located at 555 W. Adams Street, Chicago, IL 60661, and is authorized to do business in the State of Massachusetts, including within this District.

24. The CRA Defendants are each a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f). Each CRA Defendant is regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d)) to third parties.

25. The information that the CRA Defendants collect, maintain, and sell includes confidential details about the income, finances, credit histories, address histories, application histories, credit review histories, and employment histories of 245 million Americans. The CRA Defendants also collect consumers' personal identifiers, such as Social Security Numbers ("SSNs"), dates of birth, telephone numbers, and addresses.

26. The CRA Defendants collect and maintain such information about consumers, whether consumers like it or not. Consumers do not have a choice as to whether the CRA Defendants collect and maintain information about them. Not only that, but consumers cannot remove information that the CRA Defendants collect and maintain about them from the CRA Defendants databases. Further, the CRA Defendants sell that information about consumers for its unilateral profit, none of which is shared with the Plaintiff, who is the subject of the very data that the CRA Defendants sell.

27. Defendant, Capital One is a loan servicer with its principal place of business located at 1680 Capital One Drive, McLean, VA 22102, who regularly transacts business within the state of Massachusetts. Capital One is an entity which engages in the practice of furnishing consumer information to consumer reporting agencies, and is therefore a "furnisher of information" as contemplated by 15 U.S.C. § 1681s-2(a) & (b), and other sections of the FCRA. Further, Capital One is a "person" as defined by FCRA 1681a(b).

28. Capital One is a "Furnisher" as defined in 12 CFR 1022.41. The Furnisher Defendant regularly furnishes information relating to consumers to one or more consumer reporting agencies for inclusion in a consumer report. A data furnisher, such as Capital One, is an entity that reports information about consumers to consumer reporting agencies, which may include credit bureaus, tenant screening companies, check verification services, and medical information services, etc. Like CRAs and data users, data furnishers have legal obligations and rules that must be upheld & followed pursuant to 15 U.S.C. §1681s-2b of the FCRA.

**SUMMARY OF THE FAIR CREDIT REPORTING ACT**

29. The FCRA governs the conduct of consumer reporting agencies to preserve the integrity of the consumer banking system and to protect the rights of consumers to fairness and accuracy in the reporting of their credit information.

30. The FCRA was designed to protect consumers from the harmful effects of inaccurate information reported in consumer reports (commonly referred to as "credit reports"). Thus, Congress enshrined the principles of "fair and accurate credit reporting"

and the "need to ensure that consumer reporting agencies exercise their grave responsibilities with fairness" in the very first provision of the FCRA. *See* 15 U.S.C. § 1681(a).

31. Specifically, the statute was intended to ensure that "consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information. *See* 15 U.S.C. § 1681(b).

32. Congress also recognized that CRAs such as the Credit Bureau Defendants "have assumed a vital role in assembling and evaluating consumer credit and other information on consumers." 15 U.S.C. § 1681(a)(3). Therefore, Congress determined that there "is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681(a)(4).

33. For that reason, Congress ensured that the FCRA also provides special protections for victims of identity theft.

34. The second form of protection the FCRA provides for identity theft victims is the "fraud alert."

35. The third form of protection the FCRA provides for identity theft victims is a "security freeze," which a consumer can request from nationwide CRAs such as the CRA Defendants here.

36. The fourth and final form of protection the FCRA provides for identity theft victims is that even in the absence of a security freeze, a CRA may **only** release a consumer report to a person "which it has reason to believe...intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished..." 15 U.S.C. § 1681b(a). When a credit transaction is not initiated by the consumer, a CRA may only release the consumer's report with the consumer's authorization or if the user is making a firm offer of credit. 15 U.S.C. § 1681b(c). No consumer reporting agency may furnish a consumer report to any person if it has reasonable grounds for believing that the consumer report will not be used for a permissible purpose. 15 U.S.C. § 1681e(a).

37. To that end, the FCRA imposes the following twin duties on consumer reporting agencies: (i) consumer reporting agencies must devise and implement reasonable procedures to ensure the "maximum possible accuracy" of information contained in consumer reports (15 U.S.C. § 1681e(b)); and (ii) consumer reporting agencies must reinvestigate the facts and circumstances surrounding a consumer's dispute and timely correct any inaccuracies (15 U.S.C. § 1681i).

38. Similarly, the FCRA also imposes a duty upon the Furnishers, such as the Furnisher Defendant, to reinvestigate the facts and circumstances surrounding a consumer's dispute and timely correct any inaccuracies. (15 U.S.C. § 1681s-2b).

39. The FCRA provides consumers with a private right of action against consumer reporting agencies, such as the CRA Defendants, and data furnishers such as

Capital One, that willfully or negligently fail to comply with their statutory obligations under the FCRA.

## FACTUAL ALLEGATIONS

### Identity Theft Incident

40. Upon information and belief, in or around June 2025, a fraudulent account was opened with Defendant, Capital One using the Plaintiff's person identifying information.

41. Plaintiff was unaware of this fraudulent account until she received a letter stating she was past due for a payment.

42. Shortly after learning of the fraudulent account, the Plaintiff filed a police report with the Shirley Police Department.

43. Plaintiff also completed a Identity Fraud Information Form through Capital One.

44. In or around November 2025, the Plaintiff sent a letter disputing her Capital One account.

45. Upon information and belief, Capital One received the Plaintiff's dispute in or around November 2025.

46. In or around February 6, 2026, Plaintiff sent a letter to the three credit reporting agencies disputing the fraudulent account.

47. Within each dispute to the credit reporting agencies, Plaintiff included the police report and the Identity Theft Information Form detailing all of the fraudulent

information on her credit reports. Plaintiff also included a self-prepared letter detailing the fraudulent account.

48. Plaintiff additionally included with each dispute her bank statements and identifying information.

49. Within the Identity Theft Information Form her name, date of birth, social security number, address, and phone number.

50. Plaintiff also has her signature on the Identity Theft Information Form notarized by a notary public.

51. Within the Identity Theft Information Form, the Plaintiff included the fraudulent Capital One account number and details regarding the fraudulent account.

52. The Plaintiff requested that the information related to the identity theft be deleted from her credit file.

53. Plaintiff requested that the credit reporting agencies reinvestigate the disputed information and correct their reporting.

54. Upon information and belief, the credit reporting agencies forwarded the Plaintiff's dispute to each Credit Furnisher listed within the dispute letter and within this Complaint.

55. Upon information and belief, each Credit Furnisher listed within the dispute letter and within this Complaint received the dispute letters that were forwarded by the credit reporting agencies.

56. Sometime thereafter, Capital One sent a letter stating the account was valid

and not a result of identity theft.

**Trans Union's Unreasonable Dispute Reinvestigation**

57. Upon information and belief, the Plaintiff disputed her Trans Union credit report with Trans Union in or around February 2026.

58. Upon information and belief, Trans Union received the Plaintiff's dispute that disputed the Capital One account.

59. Upon information and belief, Trans Union sent the Furnisher Defendant an ACDV pursuant to Plaintiff's 2026 dispute to Trans Union.

60. Upon information and belief, Furnisher Defendant received Trans Union ACDV and did not adequately investigate Plaintiff's dispute.

61. Upon information and belief, Trans Union allowed the fraudulent account to remain on her TransUnion report after the 2026 dispute as it was still appearing on her credit report when she pulled her Trans Union report on March 24, 2026 date.

62. In or around February 6, 2026, the Plaintiff mailed Trans Union a dispute letter via certified mail.

63. Upon information and belief, Trans Union received Plaintiff's 2026 dispute letter.

64. On or about March 7, 2026, Trans Union sent Plaintiff a letter stating that the fraudulent Capital One account was "REINSERTED: This previously deleted item has been verified; therefore, it has been added back to your credit report."

65. Upon information and belief, the fraudulent account is still appearing on the

Plaintiff's Trans Union credit report.

66. Trans Union failed to adequately review all of the information provided to it by Plaintiff.

67. Trans Union violated 15 U.S.C. § 1681i by failing to conduct a reasonable investigation with respect to the disputed information, failing to review all relevant information available to it, and failing to recognize that the disputed information was the product of identity theft.

**Experian's Unreasonable Dispute Reinvestigation**

68. Upon information and belief, the Plaintiff disputed her Experian credit report with Experian in or around February 2026.

69. Upon information and belief, Experian received the Plaintiff's dispute that disputed the Capital One account.

70. Upon information and belief, Experian sent the Furnisher Defendant an ACDV pursuant to Plaintiff's 2026 dispute to Experian.

71. Upon information and belief, the Furnisher Defendant received Experian ACDV and did not adequately investigate Plaintiff's dispute.

72. Upon information and belief, Experian allowed the fraudulent account to remain on her Experian report after the 2026 dispute as it was still appearing on her credit report when she pulled her Experian report on March 24, 2026.

73. In or around February 6, 2026, the Plaintiff mailed Experian a dispute letter via certified mail.

74. Upon information and belief, Experian received Plaintiff's 2025 dispute letter.

75. Upon information and belief, the fraudulent account are still appearing on the Plaintiff's Experian credit report.

76. Experian failed to adequately review all of the information provided to it by Plaintiff.

77. Experian violated 15 U.S.C. § 1681i by failing to conduct a reasonable investigation with respect to the disputed information, failing to review all relevant information available to it, and failing to recognize that the disputed information was the product of identity theft.

**Equifax's Unreasonable Dispute Reinvestigation**

78. Upon information and belief, the Plaintiff disputed her Equifax credit report with Equifax in or around February 2026.

79. Upon information and belief, Equifax received the Plaintiff's 2026 dispute that disputed the fraudulent Capital One account.

80. Upon information and belief, Equifax sent the Furnisher Defendant an ACDV pursuant to Plaintiff's 2026 dispute to Equifax.

81. Upon information and belief, the Furnisher Defendant received Equifax's 2026 ACDV and did not adequately investigate Plaintiff's dispute.

82. Upon information and belief, Equifax allowed the fraudulent account to remain on her Equifax report after the 2026 dispute as it was still appearing on her credit

report when she pulled her Equifax report on March 26, 2026 date.

83. In or around February 2026, the Plaintiff mailed Equifax a dispute letter via certified mail.

84. Upon information and belief, Equifax received Plaintiff's 2026 dispute letter.

85. On or about March 6, 2026, Equifax sent Plaintiff a letter stating that the fraudulent One Progress account was "removed from your Equifax credit file."

86. On or about March 6, 2026, Equifax sent Plaintiff a letter stating that the fraudulent Capital One account was "reinserted . . . as reported to us by the company"

87. Upon information and belief, the fraudulent account is still appearing on the Plaintiff's Equifax credit report.

88. Equifax failed to adequately review all of the information provided to it by Plaintiff.

89. Equifax violated 15 U.S.C. § 1681i by failing to conduct a reasonable investigation with respect to the disputed information, failing to review all relevant information available to it, and failing to recognize that the disputed information was the product of identity theft.

**The CRA Defendants' Method for Considering Consumer Credit Report Disputes**

90. The credit industry has constructed a method of numeric-alpha codes for considering consumer credit report disputes. See 15 U.S.C. § 1681i(a)(5)(D).

91. The credit bureaus, Equifax, Experian, Trans Union, and non-party Innovis, have thus created the Online Solution for Complete and Accurate Reporting, or e-OSCAR,

as the credit industries' standard of performance. e-OSCAR allows the credit bureaus to create and data furnishers to respond to disputes initiated by consumers by routing credit reporting agency-created prompts for automated consumer dispute verifications to the appropriate data furnishers. e-OSCAR utilizes a numeric-alpha language specific to the credit reporting industry.

92. That lexicon or unique language is commonly referred to in the credit reporting industry as “Metro II.”

93. It is also known industry wide as the CDIA’s “Credit Reporting Resource Guide.”

94. Metro II is driven by numeric codes that translate into specific alpha representations about consumers' creditworthiness and character that will ultimately appear on credit reports issued to third parties who make credit, insurance, rental, and employment decisions regarding consumers.

95. Metro II codes are used on an industry wide form known within the credit industry as an ACDV electronic form.

96. The ACDVs have many fields in their body for use in effecting thorough and complete communications between data furnishers and the credit reporting agencies.

97. These ACDV “fields” have various titles for the many substantive areas into which the Metro II codes can be entered.

98. Upon receiving a dispute from a consumer, the credit bureaus have an automated system that prepares ACDVs that are sent to each of the data furnishers that are

reporting the credit information disputed by a consumer.

99. The data furnishers, like the Furnisher Defendant, then have an obligation under the FCRA to conduct a reasonable reinvestigation with respect to the disputed credit information and review all relevant information provided by the consumer with the dispute to determine whether the disputed credit account information are accurate and/or belongs to the disputing consumer. *See* 15 U.S.C. § 1681s-2(b).

100. Once the data furnisher completes its reinvestigation, it will code the ACDV accordingly, representing either that the disputed information was verified as accurate and belonging to the disputing consumer, updating information related to the account, or deleting the account entirely, and return the ACDV to the respective credit bureau(s) via e-OSCAR.

**The Furnisher Defendant's Unreasonable Dispute Investigations**

101. Upon information and belief, Furnisher Defendant Capital One failed to adequately review all of the information provided to them by Plaintiff.

102. Upon information and belief, Furnisher Defendant Capital One verified the disputed Fraudulent Inquiries as accurate in response to Equifax, Experian, and Trans Union's ACDVs.

103. Furnisher Defendant violated 15 U.S.C. § 1681s-2(b) by failing to conduct a reasonable investigation with respect to the disputed information, failing to review all relevant information available to it, and failing to recognize that the disputed Fraudulent Inquiries were the product of identity theft.

**Plaintiff Sustained Damages as a Result of the Defendants' Conduct**

104. Plaintiff did exactly what she should have done upon realizing she was the victim of identity theft.

105. Plaintiff filed a police report regarding the identity theft.

106. Plaintiff filed an Identity Fraud Information Report.

107. Plaintiff disputed with the CRA Defendants.

108. Plaintiff disputed fraudulent information with Furnisher Defendant.

109. Despite Plaintiff's disputes of the Fraudulent account which were the product of fraud, Experian Equifax, and Trans Union hardly waivered in their refusal to block the same.

110. Upon information and belief, Experian, Equifax, and Trans Union continue to report the inaccurate account on Plaintiff's credit reports.

111. As a result of the Defendants' conduct, Plaintiff sustained severe emotional distress. Specifically, Plaintiff has spent an inordinate amount of time dealing with the stress and anxiety caused by the false reporting from the Defendants.

112. Plaintiff suffered from countless nights of poor sleep, no sleep, or interrupted sleep as her mind frequently drifts to thoughts of the issues with her credit report, future issues caused by Defendants, and/or other related matters.

113. Plaintiff wonders if this fraudulent account will continue to follow her every time she does apply for any credit or any lease in the future.

114. Plaintiff reasonably believes that the Furnisher Defendant failed to conduct

reasonable investigations with her disputes, failed to have the disputed Fraudulent Account removed from Plaintiff's Experian, Equifax, and Trans Union credit files, and in fact, verified the Fraudulent account as accurate to Defendant Equifax, Experian, and Trans Union and in so doing inaccurately suggested that Plaintiff was responsible for the Fraudulent Account.

115. Plaintiff reasonably believes that Equifax, Experian, and Trans Union continue to inaccurately publish the Fraudulent Inquiries in Plaintiff's consumer reports.

116. As a direct result of the CRA Defendants' ardent refusal to remove the disputed Fraudulent Account, which were a product of identity theft, the CRA Defendants have continued to saddle Plaintiff with the Fraudulent Account which were the product of identity theft.

117. Further, as a direct result of the Furnisher Defendant's verification of the disputed Fraudulent and tampered account, the Furnisher Defendant have continued to saddle Plaintiff with a fraudulent account which were the product of identity theft.

118. Due to Defendants' ardent refusal to comply with their respective obligations pursuant to the FCRA, Plaintiff was forced to obtain legal advice and counsel, for which she incurred attorney's fees.

119. Further, and due to Defendants' inexplicable refusal to remove the Fraudulent Account from an identity theft victim's credit file, Plaintiff expended countless hours disputing the same, to no avail.

120. Defendants' conduct disrupted Plaintiff's life.

121. In addition to impacting her work productivity and income, dealing with the consequences of Defendants' conduct has taken Plaintiff away from time xhe would otherwise have spent with her friends and family. Plaintiff has reasonably lost countless hours suffering and worrying over whether someone would seek to collect the outstanding balances on the Fraudulent Account from her.

122. Defendants' conduct has caused Plaintiff extreme and ongoing stress and anxiety. Plaintiff has suffered sleepless nights, frustration, worry, and ultimately felt utterly hopeless that Defendants would ever properly reinvestigate her disputes. Further, Plaintiff reasonably believes that the Fraudulent Account have negatively impacted and depressed her credit score.

123. At all times pertinent hereto, Defendants were acting by and through their agents, servants, and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendants herein.

124. At all times pertinent hereto, the conduct of Defendants, as well as that of their representative agents, servants, and/or employees, was intentional, willful, reckless, grossly negligent and in utter disregard for federal law and the rights of Plaintiff herein.

125. Plaintiff's ongoing stress and anxiety over the situation, and after repeatedly receiving one non-responsive communication after another from Defendants, Plaintiff feels a surge of panic each time she receives another communication from Defendants. HEr ongoing stress and anxiety regarding the situation has affected her and her relationships

negatively.

126. CRA Defendants have a long history of disregarding the credit reporting rights of identity theft victims under the FCRA. For example, in the very similar matter of April Hendrix vs. Equifax, et. al., (N.CM.D. C.A. No. 1-16-cv-201), an identity theft victim sued several CRAs, including Experian, Equifax, and Trans Union over their repeated wrongful removal of security freezes, release of her credit reports for impermissible purposes, and refusal to properly reinvestigate disputed identity theft information on her credit reports.

127. The *Hendrix* suit put Experian, Equifax, and Trans Union on notice several years ago that its policies and procedures for implementing security freezes and handling identity theft victims' requests and disputes were woefully inadequate.

128. The CRA Defendants have had years of notice in the form of federal lawsuits, despite it all, the CRA Defendants did not take any better steps to protect the Plaintiff here.

129. The internal policies and procedures of the CRA Defendants do not appear to place any value on its obligations under the FCRA to report credit entries accurately or to reinvestigate carefully when notified of consumer disputes.

130. As a standard practice, the CRA Defendants do not conduct independent investigations in response to consumer disputes. Instead, it merely parrots the response of the data furnishers, despite numerous court decisions admonishing this practice. See *Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997) (The 'grave responsibilit[y]' imposed by § 1681(a) must consist of something more than merely

parroting information received from other sources. Therefore, a 'reinvestigation' that merely shifts the burden back to the consumer and the credit grantor cannot fulfill the obligations contemplated by the statute."); *Apodaca v. Discover Fin. Servs.*, 417 F. Supp. 2d 1220, 1230-31 (D.N.M. 2006) (noting that credit reporting agencies may not rely on automated procedures that make only superficial inquiries once the consumer has notified it that information is disputed); *Gorman v. Experian Info. Sols., Inc.*, 2008 WL 4934047, at *6 (S.D.N.Y. Nov. 19, 2008).

131. The Defendants are aware of the shortcomings of their respective procedures and intentionally choose not to comply with the FCRA to lower their costs. Accordingly, the Defendants' violations of the FCRA are willful.

132. The Defendants' policies and procedures clearly establish willfulness, wantonness, and utter and reckless disregard for the rights and interests of consumers and led directly to the injuries of Plaintiff as described in this complaint.

133. As a result of the Defendants' conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of ability to purchase and benefit from her good credit rating; detriment to her credit rating; reduced overall creditworthiness; the expenditure of time and money disputing and trying to remove the Fraudulent Account which was the product of identity theft; and, the expenditure of labor and effort disputing and trying to remove the Fraudulent Account which were the product of identity theft.

134. Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish and pain,

sleep loss, reputational damage, humiliation, stress, anger, frustration, shock, violation of Plaintiff's right to privacy, fear, worry, anxiety, and embarrassment attendant to being a victim of identity theft whose veracity is doubted, questioned and disbelieved by the Defendants.

**COUNT I**
**15 U.S.C. § 1681e(b)**
**Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy**
**(Equifax, Experian, and Trans Union Only)**

135. Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully set forth herein.

136. The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

137. On numerous occasions, Equifax, Experian, and Trans Union prepared patently false consumer reports concerning Plaintiff.

138. Despite actual and implied knowledge that Plaintiff was the victim of identity theft, Equifax, Experian, and Trans Union readily and repeatedly sold such false reports to one or more third parties, thereby misrepresenting Plaintiff, and ultimately, Plaintiff's creditworthiness by suggesting that Plaintiff was responsible for the Fraudulent Inquiries.

139. Further, due to the Fraudulent Account and Inquiries, Plaintiff suffered adverse action from potential creditors.

140. Defendant Experian violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning Plaintiff.

141. Defendant Equifax violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning Plaintiff.

142. Defendant Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning Plaintiff.

143. As a result of Equifax, Experian and Trans Union's conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of ability to purchase and benefit from her good credit rating; detriment to her credit rating; reduced overall creditworthiness; the expenditure of time and money disputing and trying to remove the Fraudulent Inquiries which were the product of identity theft; and, the expenditure of labor and effort disputing and trying to remove the Fraudulent Inquiries which were the product of identity theft.

144. Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish and pain, sleep loss, reputational damage, humiliation, stress, anger, frustration, shock, violation of Plaintiff's right to privacy, fear, worry, anxiety, and embarrassment attendant to being a victim of identity theft whose veracity is doubted, questioned and disbelieved by Equifax, Experian, and Trans Union.

145. Equifax, Experian, and Trans Union's conduct, actions, and inactions were willful, rendering Equifax, Experian, and Trans Union liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, Equifax, Experian, and Trans Union were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

146. Plaintiff is entitled to recover attorneys' fees and costs from Equifax, Experian, and Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## COUNT II
## 15 U.S.C. § 1681i
## Failure to Perform a Reasonable Reinvestigation
## (Equifax, Experian, and Trans Union Only)

147. Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully set forth herein at length.

148. The FCRA mandates that a CRA conduct an investigation of the accuracy of information "[I]f the completeness or accuracy of any item of information contained in a consumer's file" is disputed by the consumer. See 15 U.S.C. § 1681i(a)(1). The Act imposes a 30-day limitation for the completion of such an investigation. Id.

149. The FCRA provides that if a CRA conducts an investigation of disputed information and confirms that the information is in fact inaccurate or is unable to verify the accuracy of the disputed information, the CRA is required to delete that item of information from the consumer's file. See 15 U.S.C. § 1681i(a)(5)(A).

150. On or about February 6, 2026, Plaintiff disputed the inaccurate information with the CRA Defendants and requested that they correct and/or delete a specific item in her credit file that is patently inaccurate, misleading, and highly damaging to her, namely, the Fraudulent account and inquiries that were the product of identity theft.

151. Plaintiff disputed the identity theft information with the Equifax, Experian, and Trans Union to no avail.

152. Plaintiff supported her disputes with a copy of an FTC Identity Theft Report and a police report..

153. Despite actual and implied knowledge that Plaintiff was the victim of identity theft, and in response to Plaintiff's disputes, Equifax, Experian, and Trans Union conducted virtually no investigations of Plaintiff's disputes, or such investigations were so shoddy as to allow patently false and highly damaging information to remain in Plaintiff's credit file.

154. Equifax, Experian, and Trans Union's refusal to delete the identity theft information provided credibility to the Fraudulent Inquiries and forced an identity theft victim to be repeatedly confronted with the evidence of identity theft.

155. Defendant Experian violated 15 U.S.C. § 1681i by failing to conduct a reasonable investigation to determine whether the disputed information was inaccurate and record the current status of the disputed information, or delete the disputed information, before the end of the 30-day period beginning on the date on which they received the notices of dispute from Plaintiff; and by failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file.

156. Defendant Equifax violated 15 U.S.C. § 1681i by failing to conduct a reasonable investigation to determine whether the disputed information was inaccurate and record the current status of the disputed information, or delete the disputed information, before the end of the 30-day period beginning on the date on which they received the notices of dispute from Plaintiff; and by failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file.

157. Defendant Trans Union violated 15 U.S.C. § 1681i by failing to conduct a reasonable investigation to determine whether the disputed information was inaccurate and record the current status of the disputed information, or delete the disputed information, before the end of the 30-day period beginning on the date on which they received the notices of dispute from Plaintiff; and by failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file.

158. As a result of Equifax, Experian, and Trans Union's conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of ability to purchase and benefit from her good credit rating; detriment to her credit rating; reduced overall creditworthiness; the expenditure of time and money disputing and trying to remove the Fraudulent Inquiries which were the product of identity theft; and, the expenditure of labor and effort disputing and trying to remove the Fraudulent Inquiries which were the product of identity theft.

159. Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish and pain, sleep loss, reputational damage, humiliation, stress, anger, frustration, shock, violation of

Plaintiff's right to privacy, fear, worry, anxiety, and embarrassment attendant to being a victim of identity theft whose veracity is doubted, questioned and disbelieved by Equifax, Experian and Trans Union.

160. Equifax, Experian, and Trans Union's conduct, actions, and inactions were willful, rendering Equifax, Experian, and Trans Union liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, Equifax, Experian, and Trans Union were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

161. Plaintiff is entitled to recover attorneys' fees and costs from Equifax, Experian, and Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**COUNT III**
**15 U.S.C. § 1681s-2(b)**
**Failure to Conduct an Investigation of the Disputed Information and Review of all Relevant Information Provided by the Consumer**
**(Capital One Only)**

162. Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully set forth herein at length.

163. The Furnisher Defendant caused the Fraudulent Account to be added to Plaintiff's credit file with the national credit bureaus, including but not limited to the CRA Defendants. Those inquiries were the product of identity theft.

164. Furnisher Defendant violated 15 U.S.C. § 1681s-2(b) by failing to investigate Plaintiff's dispute(s), or otherwise by failing to fully and properly investigate Plaintiff's

dispute(s), including but not limited to failing to review all relevant information regarding the same; by failing to permanently and lawfully correct its own internal records to prevent the re-reporting of the inaccurate information relating to Plaintiff to the national credit bureaus, including but not limited to the CRA Defendants; and, by failing to cease furnishing inaccurate information relating to Plaintiff to the national credit bureaus, including but not limited to the CRA Defendants.

165. As a result of the Furnisher Defendant's conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of ability to purchase and benefit from her good credit rating; detriment to her credit rating; reduced overall creditworthiness; the expenditure of time and money disputing and trying to remove the Fraudulent Inquiries which were the product of identity theft; and, the expenditure of labor and effort disputing and trying to remove the Fraudulent Account and Inquiries which were the product of identity theft.

166. Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish and pain, sleep loss, reputational damage, humiliation, stress, anger, frustration, shock, violation of Plaintiff's right to privacy, fear, worry, anxiety, and embarrassment attendant to being a victim of identity theft whose veracity is doubted, questioned and disbelieved by the Furnisher Defendant.

167. Furnisher Defendant conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be

determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, Furnisher Defendant was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

168. Plaintiff is entitled to recover attorneys' fees and costs from Furnisher Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**PRAYER FOR RELIEF**

(a) WHEREFORE, Plaintiff respectfully requests that this Honorable Court grant the following relief against Defendants: Declaratory judgment that Defendants violated the FCRA, 15 U.S.C. § 1681;

*(b)* An award of actual, statutory, and punitive damages pursuant to 15 U.S.C. §§ 1681, *et seq.;*

(c) An award of costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1681n and § 1681o; and,

Such other and further relief as this Honorable Court may deem just and proper, including any applicable pre-judgment and post-judgment interest, and/or declaratory relief.

**JURY DEMAND**

Plaintiff hereby demands jury trial on all issues so triable.

RESPECTFULLY SUBMITTED this 16th day of June, 2026.

By: *<u>/s/ Nicola Yousif</u>*
Nicola Yousif, Esq.
MA Bar # 679545
Shield Law
218 Willard St, #302.
Quincy, MA 02169
T: (617) 377-0000
E: nick@shieldlaw.com

*Attorney for Plaintiff,*
*Deborah Descheneaux*